Please proceed, Counsel. Good morning. May it please the Court, Jim Bickerton for the plaintiff's appellants. I'd like to start this morning, if I may, with facts of this case, because there has been some disagreement, if you will, on those facts. There are three elements to this part. You have to keep your voice up. First, that's going to pick it up, but it doesn't magnify it. Very well. Thank you. There are three elements to this part. There's one, a public road. There's two, a public beach. And three, a public park. It's a geographical feature. Indeed, it shares this with several other bays in the Hawaiian Islands, that the access to the public beach is by only one route. And that route is a public road that happens to go through a public park. The road goes to the public beach, and it is the means by which the public accesses the public beach. The city, this is a critical fact, is not the proprietor of that beach. The city would have you believe that there is a delicate marine ecosystem within its nature preserve, but its nature preserve ends at the beach. Its, quote, nature preserve, which is only a label that is given to what is otherwise a straightforward, standard-issue city park, ends there, and it contains grass, it contains picnic benches, it contains toilets, it contains— Well, it's my understanding the whole state of Hawaii is a delicate ecosystem. That's what we're told on the plane coming here, that's why we can't bring fruits and— We would not disagree with that. All right. It is all delicate. Hanawa Bay is viewed by the state, which does control the part of it that is considered to be the marine reserve. It's actually called a marine reserve by the state. And what's interesting about that is they do have regulations that say you shall not take fish, you shall not take coral. But those regulations say nothing about residents may take two pieces of coral, but non-residents may take one. In other words, those are facially neutral, completely non-discriminatory. The state, which is the one that controls the marine portion, no fish has ever swum in the city park. Nobody has ever snorkeled in the city park. It's a land-based facility with grass and picnic benches. Do you go so far as to say that there's never a basis for a different rule for residents and non-residents? In the matters of access to the public forum and in the matter of free movement in the open and free public space, I submit that that should be the rule. It is the rule. The city has not cited a case. And don't we have to find that in order for your side to prevail? I believe that the proper approach to this case, as suggested in our brief, is to abstain from deciding the constitutional question. I think that you can find those rights in state law. The city only has the powers given to it by state law. It's not like a state. And many of the equal protection cases deal with state's powers. It doesn't have plenary power. It has only those delegated to it. Therefore, you can look at what state law says the city has to do. And if the state law says beaches are open to all, then the city can't do this. And you don't need to reach the constitutional questions. What this district judge did, which I think is particularly troubling, is that he found many novel propositions that deal with the right of access along a public road to a public beach. Counsel, isn't there a difference between saying the beaches are open to all and saying that there is an admission price? You're not closing the beach simply because you're charging admission, are you? You are closing it to those who are unwilling to pay. So it is a restriction on access. To those who are unable to pay? You think anybody who's unable to pay this fee? Well, actually, it's not in the record, but recently they raised the fee $5. And the point is there is no principle that the city can articulate that says where that's going to stop. And I suggest to you that if you're a large family and you go with five or six people and now you're talking $15 or $16 or $18 to go to the beach, then it does become an issue. These are non-residents of Hawaii, right? Correct. Where is the bay that we're talking about? It's in the east of Honolulu. It's to the east. It's basically the southeast corner of the island that we're on. And it is closest to the city. Other beaches that are similar quality would be further away and be a longer trip. Let me ask you this. So you're saying that a $5 fee for someone who's able to make a trip from outside of Hawaii, which is going to be a substantial expense regardless of where you're coming, a $5 fee is an unreasonable burden? No, I don't think that's the test, frankly. Well, I thought that was your argument. That is with all respect. I thought you said with a large family, it gets to be burdensome to pay $5. I was simply responding to the point that $3 is not trivial. But I don't suggest that it couldn't be afforded. The real question is we have a public forum here. There's no question. Every single case is it's a public forum. The only case they cite and the district court cited once he got past this theory that you have to sit there and decide what people are going to say in the park, which you can't do. But, counsel, once we make the argument that the park is a public forum, don't we then have to look to see whether or not the regulation at issue is intended to limit expression before we decide what test we apply to that regulation? No, actually, we do not. And the reason, if you look at the cases, Thomas v. Chicago District Park and the Foresight case. Okay, so your best case authority for your proposition that we don't look to whether or not the law is intended to limit expression is Thomas? That's your best case? I would say so, yes. Foresight, well, it's quoting Foresight. So I think it's clear in Foresight. There's also the- I want your best case because I don't think we have time to go through several cases. So I want to get your best case so we can discuss the parameters of our review. Clark v. Community for Creative Nonviolence is the U.S. Supreme Court case that involved whether you could camp overnight in a park. It didn't involve expression. Okay, so then you say Clark is your best case to support your proposition that we don't look at whether or not the law is intended to limit expression. Correct. To determine how we review it. I can't say that Thomas or Clark are one is better than the other. They're both. And I would hate to be stuck with just one case because these cases build upon each other. Okay, and so you say that once we look at those cases, then what is our test? It's an intermediate standard. Intermediate standard. It's access to the public forum if it's not a content-based regulation. But we do submit that where the restriction on the park is not, okay, you can't go in the park after 5 o'clock, but it's these people can't go in the park unless they pay. That is an identity-based restriction. Is it content-based, though? The cases suggest that that is the equivalent, that that requires strict scrutiny. What case are you relying upon to say that if non-residents are treated differently than residents, that's equivalent of a content-based restriction? There's no cases that have done that at the Federal level. The Layden case from the Supreme Court of Connecticut, interpreting the U.S. Federal Constitution, First Amendment, says that. The Federal cases have not had that question presented at the appellate level. Well, why should we accept that? Excuse me, the Warren case does. We have no governing precedent. What makes sense in accepting that proposition? I take it back that there is no Federal appellate precedent. The Warren case in the Fourth Circuit says that you can't discriminate between residents and non-residents in access to the public forum. But as to the content, is that a content-based discrimination? No, that was just a ban that said non-residents. Well, I know. We're asking you, why should we accept the proposition that a distinction between residents and non-residents is somehow a restriction on the content of the speech of a non-resident? The case of Buckley v. Vallejo says that the U.S. Supreme Court case says identity-based restrictions are equivalent to content-based. Harry v. Wait, wait. Buckley v. Vallejo says that? Vallejo, yes. What language? I do not have that case with me. Now, that's about campaign financing. It is. It is, but it has that language in it. Harry v. The Perry Educational System case. Well, okay, you have a vague analogy, but as a matter of reason, what sense does it make? The reason is that the access to the public forum is a fundamental right. I mean, that's not— But why should we use this particular way of getting at a constitutional violation? On the face of it, it doesn't make much sense. We have no governing precedent. Why should we suddenly invent a new precedent? I would suggest that the city is the one that is attempting to do something new here. I mean, the right— We don't have any governing cases. It's an open book. Tell us the reason why this would make sense to invent a new precedent. With great respect, I do not believe that we are asking you to set a new precedent. Warren v. Fairfax, Layden v. Connecticut, all the cases that have addressed this question have ruled that you have— Well, you can argue that, but they're not binding precedent on us. I understand. If we're going to do it, it will be a new precedent for the Ninth Circuit. Can you give them a reason why we should accept your reason? The First Amendment is the First Amendment. It's the most fundamental of— It starts with freedom of religion. We know it well. And it includes the right of assembly and the right of free association. It's been found to stem from it, not just the right of free speech. The Hague case from the U.S. Supreme Court says that the streets and parks from time immemorial are the places that people use for these activities to gather together, to meet. If we don't have one place that is the public place— The Democratic process in Hawaii? The two plaintiffs in this case did, and they are both non-residents. Well, what were they doing? In Ms. Daly, for example, her daughter lives here and is in a group that is opposed to the development of the bay. They went out there as a family to witness and view it and to discuss that development and the activities of her daughter in opposing that bay, that bay development. And her daughter didn't have to pay. The daughter didn't have to pay, and she did. They were discriminated in something that is so fundamental to being a citizen. And that's where we get to the privileges and immunities argument. I mean, the courts say we don't want to spell out exactly what is or isn't fundamental. We keep it open. We take it up on a case-by-case basis. We suggest that the right to move freely in what is public space—by state law, it is public space. The state law, the questions—you have to reach those questions first to know how—what the city is actually doing to these people. The Equal Protection Clause says you shall not be deprived of the protection of the law. And what there is is there's a law for the state that says this beach, this park, and this road are open to the public. And the city comes along and says, we will extend this protection to the group who live here, the residents. No, they didn't say that. You don't want to—I don't think you think that. It's actually part of the record. No, no, no. What I'm saying is this. They didn't preclude them from going. They just said, if you go, you're going to have to pay three bucks. That's all they said. So when you make that broad argument you're making, you're going further than this record shows. But let me ask you a question. We can disagree on what you're saying. It may make a difference to you, but at the moment, the question I'm asking you is, is there a rational basis to ever distinguish between resident and nonresident? I gather when we started with that question, your answer was no. If I gave you that impression, I certainly didn't mean to. No, there are many situations where there can be rational basis for discriminating between residents and nonresidents. They all arise in the situation where the resident has paid for something and the nonresident has not paid for it, and therefore you charge the nonresident because the resident has paid for it through his taxes. And we cite numerous cases to that effect. In other words, you are in the end treating them equally but not through the fee, but they're being charged the same thing. The problem here is nobody pays anything from Hawaii for that park. And even more importantly, where they really fell down the first time this issue came up, we argued rational basis. We said, how can it be rational to make it for state residents when the city is only the city and county of Honolulu? Why are they allowing people from Maui or Kauai or the Big Island to access this park for free? What is the rational basis for that distinction? And the city didn't have one, and the judge gave them another chance to come up with a rational basis, so they dreamed one up after the fact. What's very interesting about the state statute that restricts counties from stopping or blocking beach access is that it says, you must state your purpose in the statute, in the ordinance. And the city never did. They never gave a reason why they're doing this. They came up with one when the district judge gave them the second chance. The district judge says, okay, try again. And they said, well, we're exempting all the people in the state because the state taxpayers pay for the ocean next door. Now, that is not a rational relationship. The city's powers are limited and enumerated. It can raise fees, and it can restrict beach access when it's in the public interest to do so. The discrimination between residents and non-residents has to be tied to those. Counsel, the cases you've cited us to, Thomas, Forsyth, and Clark, involved issues where a permit was required or there was an absolute prohibition against the desired conduct. Do you have a case specifically that deals with fees as opposed to a permit requirement or an absolute prohibition? Under the Privileges and Immunities case law, there are fee cases. Under the First Amendment, I don't believe that there is one that says that a fee is the same type of restriction as a permit. But I suggest that it is. I mean, you get the permits usually by paying a fee. I understand your argument. I just wanted to know if you had case authority upon which you were relying for that argument. I do not have a case under the First Amendment regarding fees. When you said that the park was enjoyed free by the residents, somebody must pay for the park. Who pays for it? Now? Yes. The non-residents do. What? The non-residents pay for it. You mean they raise enough money? Yes. To pay for it? Yes. The record shows that they actually generated a surplus, and what they then did was they used that surplus to erect new buildings. They're actually now in a deficit because they did that, so they raised the fee to $5. It's still only paid by non-residents, and residents still are not using their – last we know in the record was not using the general fund or any fee that the residents were paying, and that covered the whole budget. Does the record show how many non-residents paid the fee? It does. It's approximately 8,000 a year, I believe. No, I'm sorry. I'm sorry. The total is 2.4 million. If you can divide that by three, I can't do it that quickly. 800,000. 800,000 people used it to pay $3. Yes. And that's enough. That covers all the lifeguard service, which is provided to everybody, not just to residents or non-residents. All of the beach sweeping, which is for the benefit of everybody. That's why we say under state law it's not a true user fee. A user fee has to be for the service that is a benefit to you. If someone charges you for something that's given away free to everyone else, they're not giving you a benefit. If they charge you to go to a beach that belongs to somebody else, that belongs to the state, they're not giving you a benefit. All we ask is that there be a road, public road, that goes to the beach, so if we want to go to that beach without going through the city's park, we can do that. The same way that you can do it every other beach in Hawaii that you've been able to do for 200 years in the state of Hawaii. And we're suggesting that under state law that's also considered a fundamental right. The state legislature has said the fundamental right of free movement in the public space is the right to access the shoreline. We are an island state. No other state has the shoreline as its border. So you say that law was written to apply to residents and non-residents alike, the reach of that law? It specifically says in the legislative history, and we cite to it in a footnote in our opening brief, and we quote from the language of the legislative history, and it says, for residents and visitors alike. All right. Do you want to save some time for your bottle? I do. Thank you. Thank you very much. Good morning. John Komeiji for Belize City. May I please request to get to some of the answers to some of the questions I think that were asked of the council. The preserve, the Hanawa Bay preserve is unlike any other beach. There is no other beach where you are prohibited from interfering, touching the fish. You can't fish in Hanawa Bay. You can't take coral. You can't do a lot of things as set out in the statute. And there's no other beach like that in the state of Hawaii. And the reason for that is that it's a preserve. The intention is to preserve the fish. There's an abundance of fish in the bay. People can go and skin dive, scuba dive, and see all these fish. And the reason why they're able to do that is because of these strict enforcement rules. You know what it occurs to me, and I don't know if it's still an issue, but one of the bases for the fee may have been to regulate the number of people who visit. In other words, there may be only so many natives who would do it, but visitors would do it overwhelmingly. So you put a fee on it, and that limits how many of those overwhelming number of visitors who will visit. Because even with the fee, there were a number of visitors, and in fact enough to create a surplus in funds which may have been wrongly distributed to other parts. That's one of the issues we're going to have to decide. I don't think there's anything in the record that reflects that. There's nothing in the record. And I would be surprised if that was the case, because actually nowadays the bay is actually closed one day a week. What's the purpose of the fee? The purpose of the fee is to help, as we indicate, pay for the maintenance and preservation of the bay. Why do only outsiders pay? Because unlike what other opposing counsels said, the taxpayers of the state underwrite, and it's incorrect to say that the court didn't consider it, because the court in a footnote indicates what state services are provided. The state provides services in terms of enforcement of this conservation area. They process certain types of permits dealing with the conservation area. Is that the state or the city? The state, Your Honor. So this money is going to the city? No, the state independently undertakes these services to regulate buses. No, but the fee goes to the city, right? Correct. So what does the city provide? All of them, the maintenance, but in addition to- And counsel says that this fee pays for all the city services. It doesn't, Your Honor. Well, tell us what the- And what the lower court, the district court judge found is that there are supplemental services, such as the ambulance services, police services- What? Ambulance services. Yeah. Police services, fire department type services that are not paid out of this fee, that are used to help- I mean, unfortunately, someone drowned- Can we have a figure on that? What the district court found was that it's very difficult to- Well, I think the fire department services aren't very often called upon. I think you'd be surprised- I'd be surprised. Well, I mean, unfortunately, two days ago someone drowned at this very tranquil bay, and the fire department comes in and has to rescue or retrieve the body. But what the district court found was that it's difficult with a citywide budget to sort of apportion what portion goes to Honolulu Bay, which portion would go to downtown Honolulu, et cetera. But it says that under the Baldwin case, you need not have a one-to-one match. The rational basis behind this particular fee is that, in fact, the state payers-taxpayers, I'm sorry, of the state of Hawaii, as well as the taxpayers- Well, I don't think the state's part has anything to do with it. It's only what the city- But the reason why I raise the state here on it is that people in Hawaii, each of the various islands are separate counties. A taxpayer who may not be paying taxes to the city of Honolulu, who lives on a separate island, can visit the preserve without paying. So it's important that that person as a state taxpayer is making a contribution towards the operation of the park. Now, am I right in thinking the city and county of Honolulu include the whole island? Yes, sir. So in this theory, you could say the city could start collecting a fee for using the North Shore, Sunset Beach and all that. They could have a toll taker there. No, Your Honor, this is a very separate and different situation. No, it's a hypothetical. Why couldn't they? They say, our residents contribute to the upkeep here. Now we'll get something out of the tourists. If, in fact, it was a specific designated area and we could make the legislative case- It's a very special surfing area, isn't it? Yes, Your Honor. Well, why wouldn't that be a good fundraiser? Doesn't it hurt the residents at all? Well, I don't know if it doesn't hurt the residents. I think the residents ultimately pay the taxes to provide whatever services are there. Taxing the non-residents with a fee would be an easy way to raise revenue all around the island. Yes, but from a practical economic sense, Your Honor, if you had to- You as a visitor, and I'm just kind of using you as an example- I'd pay $3 to go to the North Shore. But if you had to pay $3 to go to the North Shore, $3 to go to- We'd go to your city. And you might not come back, Your Honor. So there are political and economic considerations that would offset the city wanting to do that. But because Fanamabe is one of the most visited attractions in the state, and because it's a nature preserve and people go there to see all these various fishes and marine life, the city, in its legislative decision-making, decided that it was appropriate to charge a fee there. And I think in answer to one of the previous questions, that there is a balancing test. And I think maybe to presuppose your question, the best case that I can rely on, I think, is the Baldwin v. Redwood City case, which talks about incidental burdens and what the courts then do is balance these incidental burdens versus what these First Amendment rights are. So I would say- So are you conceding that there is a First Amendment component? No, I'm not, Your Honor. But I'm just trying to- I was- maybe I jumped to a point that I shouldn't have jumped to. I fully support the district courts and believe that the district court appropriately determined that there is no First Amendment component. But if you get past that First Amendment component, the question of whether or not there's a balance, and I think you raised that or someone raised that on this panel earlier. Do you consider this to be a fee or a tax? Fee. And why is that? Because if we go through the test under the Madaris case, it directly benefits the person that pays the fee. The money comes back for this particular purpose. It's not going back. After the district court ruled that we should not use it for the other parks, the district court said it should be exclusively used for this park. So based on that, I believe that it meets the Madaris test and that this should be considered a fee and not a tax. I'd be happy to answer any other questions that the Court might have. There appear to be none. Thank you very much. Thank you. Rebuttal. With respect to Judge Farris's question, there is actually evidence in the record that the fee does not deter, even at $5 it did not deter anyone from going to the beach. Well, I saw a lot of people. I see. I mean, the numbers say that a lot of people go in spite of it. And there's nothing in the record that suggests that I just wanted him, he was here. They admitted in testimony that they looked at that question after they had it at $5, before they made the current, the fee I'm challenging of $3, and they found it had not reduced in any way. So that couldn't have been the rational basis when they enacted the current law. It's not a legitimate purpose. And I think he agreed with you on that answer. It's not a legitimate purpose to charge and say, well, we're charging for ambulance, fire, and police. Those are not services because they are not particularized to the user. They're available to the general public. You can't do that. Exactly the point that Judge Noonan made is that you can't start charging for these services because that becomes a tax. The city only has the power to charge user fees for using its facilities. It can't charge us to go to a state beach. It doesn't have that power. And it doesn't have the power to lay the charge for going to the state park, which is not the state beach, on one section of society to pay for everybody because then it's not a user fee. Yeah, but he won't get to come back to answer to yours. So suppose his answer would be, all right, he's right. But if a VISTA gets down there and has a problem which requires a fire department, the fire department is coming. And if the fire department comes for the VISTA, it isn't the same as if the fire department comes for a resident because the resident has paid for the fire truck and the VISTA hasn't. Suppose he said that, what would you say?  I would first of all say they've all paid for it because we have Marsha Sakai's declaration. It isn't whether they call on it. It's whether it will be there if they call on it. Isn't that so? Visitors have paid for that already. We have the statistics on how much of the city's general fund is actually paid for by tourists. That's in the record, Marsha Sakai's declaration. The last point is Section 4 of that ordinance should not have been severed. The legislature adopted this. The city adopted this ordinance to pay for those other parks. They put it as a whole. That was their purpose in setting this fee. Judge Kaye could not just chop off that expenditure and say now it's legal. It's still a tax. It was enacted as a tax. Madero's case says if it allows money to go somewhere else, it's a tax. You don't sever. You stop it right there. And that's what's happened. You know, a question is not going to get answered. I see the red light zone. You're not here over the $3. So what is the reason this is such a critical issue? If the city starts charging for beach access, there's no end to it. And it will not stop. You're on my North Shore analogy. I do. And it will not stop with non-residents. But that's the first step, and that's how rights are lost. Can I ask you one? I think you said this, but I want to be clear. You say that state law required the city to put its purpose in the ordinance, and they did not put the purpose in the ordinance. Correct. Okay. 115-345. Thank you, counsel. Thank you to both counsel for a well-argued case. This case is submitted to the court for decision, and we will be in recess for 10 minutes. All rise. Thank you. I don't care. I already said that. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Withdrew? No, I didn't withdraw. Just for trial. So what do the rules say? State rules? 3.7, I think. 3.7. 3.7. 3.7. Thank you. The next case on calendar for argument is Honolulu Marine, Inc. versus Orsini.
judges: Silverman, W. Fletcher, Rawlinson